UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, AFL-CIO, | ) ) ) ) ) ) |
| | Case No.: 22-cv-3161 |
| **Plaintiff,** | ) |
| v. | ) ) |
| NATIONAL RESTORATIONS, INC., and DESIGN INSTALLATION SYSTEMS, INC., | ) ) ) ) |
| **Defendants.** | ) |

## COMPLAINT

Administrative District Council 1 of Illinois of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO ("Union"), through its attorneys, Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich, LLP, by way of complaint against National Restorations, Inc. ("National"), and Design Installation Systems, Inc. ("Design"), states as follows:

### INTRODUCTION, JURISDICTION, AND VENUE

1. This matter is a suit by a labor organization against two businesses to enforce a labor arbitration award.

2. The Court has jurisdiction over this matter and venue is proper pursuant to § 301 of the Labor-Management Relations Act, 29 U.S.C. §185(a) and (c).

### PARTIES

3. The Union is a "labor organization" within the meaning of 29 U.S.C. § 152(5), and maintains its principal place of business within this district.

4. National is an Illinois corporation that maintains its principal place of business and transacts business within this district, and is an "employer" within the meaning of 29 U.S.C. § 152(2).

5. Design is an Illinois corporation that maintains its principal place of business and transacts business within this district, and is an "employer" within the meaning of 29 U.S.C. § 152(2).

## FACTS

### Contracts

6. On or about September 3, 1997, National signed a short form collective bargaining agreement in the form of a Memorandum of Understanding ("MoU") with the Union.

7. The MoU has remained in effect since it was signed.

8. The MoU incorporates, with limited exceptions not relevant here, the substantive terms of the master collective bargaining agreements negotiated from time to time between the Union and the employer associations that bargain through the Northern Illinois Mason Employers Council ("Association Agreement").

9. The MoU and the Association Agreement constitute the applicable collective bargaining agreement, and will be referred to individually and together as the "CBA."

10. The CBA provides, among other things, that disputes over the meaning of or compliance with its terms will be resolved through a grievance and arbitration process that culminates in presentation of disputes to, and resolution of those disputes by, a joint arbitration board ("JAB"); and the CBA further provides that employers are required to abide by decisions issued by the JAB, use only eligible bargaining unit members to perform work

covered by the CBA, comply with other Union security provisions in the CBA, pay specified wages and fringe benefit fund contributions on all work, and report all jobs to the Union and to the affiliated fringe benefit trust funds ("Benefit Funds").

11. Design entered into a separate MoU on March 21, 1985, with a local affiliate of the Union, and that agreement has remained in effect since it was signed.

12. On or around August 25, 2021, the Union informed National and Design of a grievance alleging that they had violated numerous provisions of the CBA, that the grievance included an allegation that Design was bound to the CBA and responsible for all violations, and that the grievance would be presented to the JAB at an arbitration hearing, which the letter urged them to attend.

13. The Union subsequently informed National and Design the arbitration would be held on September 20, 2021.

14. The hearing was held as scheduled on September 20, with representatives of the Union and the Benefit Funds presenting the case in support of the grievance and with the owner of the two businesses and another individual appearing on behalf of National and Design.

15. After hearing the presentations and arguments, considering the evidence, and conducting their deliberations, the arbitrators reached a preliminary decision, and then called the parties back into the hearing room to explain that preliminary decision and to offer the parties an opportunity to present further written submissions if they wished to do so.

16. The parties later made a joint request through their lawyers that the arbitrators not issue a decision while they engaged in further discussions, the parties eventually presented written submissions in the form of agreed factual material and arguments, and the arbitrators

then treated the hearing as being closed and subsequently issued a written award (the "Arbitration Award"), a copy of which is attached as Exhibit A.

17. The Arbitration Award found, among other things, that Design, as well as National, is bound to the CBA, that National and Design were each responsible for the contract it signed with the Union and for the contract signed by the other, and that both businesses are "responsible for all obligations under both agreements"; and the award explained the arbitrators would refer to the two businesses together as the "Contractor," which term the Union will also use in the remainder of this Complaint to refer to the two defendants. *Id.*, p. 2, first full paragraph.[1]

18. The arbitrators explained they had determined the Contractor had violated numerous provisions of the CBA through the employment of at least four ineligible employees over an extended period of time to perform bargaining unit work, without reporting on those employees, paying them the required wages, making contributions on their hours to the Benefit Funds, or otherwise treating them as being covered by the CBA.

19. Based on their determination as to the amount of work performed in disregard of the CBA, and as to other damages that resulted from the Contractor's breaches of the CBA, the Arbitration Award assessed damages against the Contractor and in favor of the Union and Benefit Funds in the amount of $882,246.73. *Id.*, p. 10.

20. The Arbitration Award also ruled that the Contractor was required to (1) obtain and provide either a cash bond or a surety bond in a specified form and in the amount of $120,000.00, (2) allow the Union to place working stewards on all jobs, (3) abide by

---

[1] The Arbitration Award is rendered in all capital letters. For ease of review, the quotation taken from it uses normal lower case and capitalization.

additional obligations for reporting work, and (4) submit to an audit at its own expense. *Id.*, pp. 10-11.

21. The arbitrators ruled that unless the Contractor provided the bond within three weeks of the date the award was mailed to it, it was required to stop performing any work, regardless of the name or business form used, within the Union's geographic and craft jurisdiction and not resume such work until it provided the bond. *Id.*, p. 11.

22. In addition, the arbitrators ruled that if the Contractor failed to comply fully with the award within four weeks, it would be required to reimburse the Union and/or the Benefit Funds for all costs and legal fees starting with the date the award was provided to it, and that it would be required to pay interest on all amounts owed at the rate of 10% a year, compounded annually, from the hearing date, September 20, 2021, to the date of the payment. *Id.*

23. The Union transmitted the Arbitration Award to the Contractor on January 17, 2022, and the Contractor acknowledged receipt on January 18, 2022.

24. Despite being served with the Arbitration Award, the Contractor has not made the required payments or satisfied the other obligations imposed by that award.

25. The Contractor's failure to comply with the Arbitration Award is a breach of the CBA.

WHEREFORE, Administrative District Council 1 of Illinois of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO, requests that judgment be entered, jointly and severally, against National Restorations, Inc., and Design Installation Systems, Inc., as follows:

(1) Ordering them to pay $882,246.73, along with interest at the rate of 10% a year,

compounded annually, from September 20, 2021 to the date of payment, to the Union, on behalf of itself and the Benefit Funds;

 (2) Ordering them to provide a cash bond or a surety bond in the required form and in the name of both businesses, in the amount of $120,000.00;

 (3) Ordering them to comply with the job reporting, steward, and audit provisions as set forth in the Arbitration Award;

 (4) Ordering them to stop performing any work, regardless of the name or business form used, within the geographic and craft jurisdiction of the Union, until they provide the bond;

 (5) Ordering them to reimburse the Union and the Benefit Funds for all legal fees and costs incurred from January 18, 2022 forward in attempting to collect and otherwise obtain compliance with the award; and

 (6) Granting such other relief as the Court deems just and proper.

              Respectfully submitted,

               /s/ Barry M. Bennett
               Barry M. Bennett
               Attorney for
         Administrative District Council 1 of Illinois of the
          International Union of Bricklayers and Allied
             Craftworkers, AFL-CIO

Barry M. Bennett
David P. Lichtman
DOWD, BLOCH, BENNETT, CERVONE,
 AUERBACH & YOKICH, LLP
8 S. Michigan Avenue, 19th Floor
Chicago, Illinois 60603
(312) 372-1361
bbennett@laboradvocates.com